IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

### STATE OF ARIZONA,
*Petitioner,*

*v.*

### HECTOR SEBASTION NUNEZ-DIAZ,
*Respondent.*

No.  CR-18-0514-PR
Filed July 16, 2019

Appeal from the Superior Court in Maricopa County
The Honorable Phemonia L. Miller, Judge *Pro Tempore*
No.  CR2013-430489-001
**AFFIRMED**

Memorandum Decision of the Court of Appeals
Division One
1 CA-CR 16-0793 PRPC
Filed Sept. 18, 2018
**AFFIRMED**

COUNSEL:

Ray A. Ybarra Maldonado (argued), Juliana C. Manzanarez, Law Office of
Ray A. Ybarra Maldonado, PLC, Phoenix, Attorneys for Hector Sebastian
Nunez-Diaz

William G. Montgomery, Maricopa County Attorney, Karen Kemper,
Deputy County Attorney (argued), Phoenix, Attorneys for State of Arizona

Mark Brnovich, Arizona Attorney General, Drew C. Ensign (argued),
Deputy Solicitor General, Phoenix, Attorneys for Amicus Curiae Arizona
Attorney General

John Walters, Office of the Pima County Public Defender, Tucson; Jon M.
Sands, Federal Public Defender, Keith J. Hilzendeger (argued), Assistant
Federal Public Defender, Phoenix; Grant D. Wille, Ralls & Reidy, P.C.,
Tucson, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice,

Pima County Public Defender, and the Federal Public Defender for the District of Arizona

—————————

CHIEF JUSTICE BALES authored the opinion of the Court, in which JUSTICES TIMMER, BOLICK and PELANDER (RETIRED) joined. JUSTICE BOLICK, joined by JUSTICE PELANDER, filed a concurring opinion. JUSTICE LOPEZ, joined by VICE CHIEF BRUTINEL and JUSTICE GOULD, filed an opinion concurring in the result.

—————————

CHIEF JUSTICE BALES, opinion of the Court:

¶1        In this case involving post-conviction relief, the State argues that the lower courts erred in concluding that Hector Sebastion Nunez-Diaz, an undocumented immigrant, received ineffective assistance of counsel when he entered a guilty plea resulting in his mandatory deportation.  The State contends that because Nunez-Diaz was deportable without regard to his plea, he cannot establish a claim of ineffective assistance or, alternatively, that any constitutional violation was harmless. Because Nunez-Diaz suffered severe and mandatory consequences (including a permanent bar from reentry) as a result of the plea he entered due to counsel's deficient advice, we agree with the trial court and the court of appeals that he received ineffective assistance of counsel justifying post-conviction relief.

**I.**

¶2        We defer to a trial court's findings of fact unless clearly erroneous. *State v. Hulsey*, 243 Ariz. 367, 377 ¶ 17 (2018).  Nunez-Diaz was stopped for speeding and found in possession of small amounts of methamphetamine and cocaine.  He was subsequently charged with possession or use of a dangerous drug and possession or use of a narcotic drug, each a class 4 felony. *See* A.R.S. §§ 13-3407(A)(1), -3408(A)(1).  The record does not reflect that Nunez-Diaz had any prior criminal history.

¶3        Upon his arrest, Nunez-Diaz's family began searching for an attorney.  Their chief concern was avoiding Nunez-Diaz's deportation. They met with an attorney from a Phoenix law firm experienced in criminal defense and immigration law, who informed them that although Nunez-Diaz had a difficult case, it was possible to avoid deportation.  Reassured by this meeting, Nunez-Diaz's family chose to retain that firm, and the firm assigned a criminal defense attorney to Nunez-Diaz's case.

¶4        The State offered a plea deal that would reduce the charges Nunez-Diaz was facing to a single count of possession of drug paraphernalia, a class 6 undesignated felony.  *See* A.R.S. § 13-3415(A).  Counsel advised Nunez-Diaz to take the plea.  He did.  Consistent with the plea agreement, the trial court suspended sentencing and placed Nunez-Diaz on eighteen months' unsupervised probation.

¶5        Nunez-Diaz was transferred to the custody of United States Immigration and Customs Enforcement ("ICE").  He was informed that, because of his plea, he could not bond out of custody and would be deported.  This alarmed both Nunez-Diaz and his family, who returned to the law firm.  There, an immigration attorney told the family that because of the plea, nothing could be done to keep Nunez-Diaz in this country.  The family found new counsel who was able to negotiate for Nunez-Diaz's voluntary removal to Mexico, where Nunez-Diaz has remained.

¶6        Nunez-Diaz then initiated post-conviction relief proceedings pursuant to Arizona Rule of Criminal Procedure 32.  He claimed he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In his pleadings, he avowed that his primary concern in considering the plea offer was his immigration status and he would not have entered the plea if his counsel had accurately advised him of the immigration consequences.

¶7        After holding an evidentiary hearing, the trial court ruled that Nunez-Diaz had established ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).  The court found overwhelming evidence that "counsel's actions fell below an objective standard [of reasonableness]."  Counsel had "misrepresented the immigration consequences to defendant," and failed to inform Nunez-Diaz that his removal would be guaranteed if he accepted the plea.  As a "direct result of [counsel's] failure," Nunez-Diaz was prejudiced by forfeiting his chance at trial and thus his only chance at avoiding removal.  Accordingly, the trial court ordered that Nunez-Diaz's guilty plea be set aside.

¶8        The court of appeals granted the State's petition for review, and a divided panel denied relief.  *See State v. Nunez-Diaz*, 1 CA-CR 16-0793 PRPC, 2018 WL 4500758, at *1-*2 ¶¶ 1, 13 (Ariz. App. Sept. 18, 2018) (mem. decision).  The court concluded that Nunez-Diaz had "established he

suffered from both deficient performance and prejudice when he entered" his plea. *Id.* at *2 ¶ 10. The burden then shifted to the State to demonstrate that the constitutional deficiency was harmless, which it failed to do. *Id.* ¶ 11. The dissenting judge argued that, because Nunez-Diaz was deportable regardless of his plea, there was no prejudice and thus no constitutional claim. *Id.* at *3 ¶ 14 (Morse, J., dissenting).

¶9 We granted review to consider whether deportable immigrants can show prejudice if their lawyers' deficient performances lead them to plead guilty and suffer attendant immigration consequences – a recurring issue of statewide importance.

## II.

¶10 The Sixth Amendment guarantees a defendant the right to counsel. U.S. Const. amend. VI; *see also Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (holding that "even aliens" are protected by the Fifth and Sixth Amendments). The right to counsel includes the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To demonstrate that counsel's assistance was so deficient as to require reversal of a conviction, a defendant must show both that "counsel's representation fell below an objective standard of reasonableness" and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. Even if a defendant proves a constitutional violation, however, post-conviction relief will be denied if the state proves "beyond a reasonable doubt that the violation was harmless." Ariz. R. Crim. Proc. 32.8(c). This Court reviews a trial court's ruling on a petition for post-conviction relief for an abuse of discretion. *State v. Miles*, 243 Ariz. 511, 513 ¶ 7 (2018).

### A.

¶11 To satisfy *Strickland*'s first prong, a defendant must demonstrate that counsel's assistance was constitutionally deficient. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). Generally, plea counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. When the consequences of a plea are clear, however, "the duty to give correct advice is equally clear" and counsel must inform their client of those consequences. *Id*.

¶12        This case is one in which counsel was obliged to give correct advice about the clear consequences of a plea. Nunez-Diaz's plea resulted in a conviction that falls under 8 U.S.C. § 1227(a)(2)(B). Such a conviction renders a noncitizen, other than a lawful permanent resident, ineligible for discretionary relief from removal, *see, e.g.*, 8 U.S.C. § 1229b(b)(1)(C), and would permanently prevent that individual from ever returning to this country, 8 U.S.C. § 1182(a)(2)(A)(i)(II). The trial court found that competent counsel "could have easily" explained the adverse immigration consequences of the plea and that there was "overwhelming evidence" that counsel's assistance was constitutionally deficient. At oral argument in this Court, the State conceded that plea counsel's assistance fell below an objective standard of reasonableness. We agree - the first prong of *Strickland* has been satisfied.

**B.**

¶13        *Strickland*'s second prong requires that a defendant show counsel's errors had a prejudicial effect. *See Padilla*, 559 U.S. at 369. When a claim of ineffective assistance of counsel stems from plea proceedings, a defendant must show a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, it must "have been rational under the circumstances" for a defendant to refuse a plea and go to trial. *Padilla*, 559 U.S. at 372.

¶14        It is not irrational for a defendant to go to trial when trial represents the only, albeit slim, chance that a defendant can avoid severe and certain immigration consequences. *Lee v. United States*, 137 S. Ct. 1958, 1968 (2017). In *Lee*, defendant Lee received inaccurate advice from plea counsel that resulted in him signing a plea that guaranteed deportation. *Id.* at 1963. The "determinative issue" in Lee's decision-making had been the avoidance of deportation. *Id.* Thus, Lee initiated post-conviction relief proceedings, claiming ineffective assistance of counsel. *Id.*

¶15        The Supreme Court ultimately sided with Lee. *Id.* at 1969. Although a defendant must ordinarily "show that he would have been better off going to trial," this is only true when a defendant's decision turns on his prospects at trial. *Id.* at 1965. Lee's decision, though, turned on what was most likely to keep him in the country – he would not have entered his plea had he been accurately advised of the immigration consequences. *Id.* at 1965, 1967. Although Lee was almost certain to lose at trial, "that 'almost'

could make all the difference." *Id.* at 1969.  It was not irrational for Lee to try for a "Hail Mary" win in order to avoid the "particularly severe penalty" of deportation.  *Id.* at 1967-68.

¶16 *Lee* controls our resolution of this case.  The trial court found that had Nunez-Diaz been accurately advised, he would not have accepted his plea, opting instead to continue plea negotiations or proceed to trial.  A plea here resulted automatically in the outcome that Nunez-Diaz most sought to avoid – immediate and permanent removal.  If Nunez-Diaz had gone to trial and been convicted, the presumptive sentence on the more serious charge – possession or use of a dangerous drug – would have been 2.5 years' imprisonment, A.R.S. § 13-702(D), and he could have been sentenced to probation on both charges, A.R.S. § 13-901.01(A).  *Cf. Lee*, 137 S. Ct. at 1967 (indicating that it would not be irrational for a defendant to opt for trial if there was only a slight difference between the terms of the plea deal and the worst outcome at trial).  Although his chances of winning at trial, and thus avoiding automatic immigration consequences, were "highly improbable," it would not have been irrational for Nunez-Diaz to reject the plea.  *See id.*

¶17 The State essentially argues that *Lee* only applies to those who are lawfully present in this country.  This misreads *Lee* – it turned not on Lee's immigration status but on whether he was "prejudiced by the 'denial of the entire judicial proceeding.'"  137 S. Ct. at 1965 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)).  Moreover, the cases the State relies on to support its argument were decided before *Lee* and their reasoning does not survive.  *Compare United States v. Batamula*, 823 F.3d 237, 243 (5th Cir. 2016) (en banc) (stating that, because defendant was already removable, he had not offered a rational reason for wanting to proceed to trial), *with Lee*, 137 S. Ct. at 1966-68 (holding that it was rational to insist on going to trial on the off-chance, albeit remote, a defendant could avoid deportation).

¶18 Because Nunez-Diaz has established a constitutional violation, he is entitled to post-conviction relief unless the State meets its burden of proving beyond a reasonable doubt that the violation was harmless.  Ariz. R. Crim. P. 32.8(c).  The State contends there was no harm here because Nunez-Diaz was deportable under § 1227(a)(1)(B) and would have been removed regardless of his plea.

¶19    We disagree.  "There is a vast difference for an unauthorized alien between being generally subject to removal and being convicted of a crime that subjects an unauthorized alien to automatic, mandatory, and irreversible removal."  *Diaz v. State*, 896 N.W.2d 723, 733 (Iowa 2017).  As the court of appeals noted, the record does not establish that Nunez-Diaz would necessarily have been removed had he gone to trial and been acquitted.  There are many reasons that a deportable immigrant may not be removed.  Daniel A. Horwitz, *Actually,* Padilla *Does Apply to Undocumented Defendants*, 19 Harv. Latino L. Rev. 1, 8-10 (2016).  Deportable immigrants are potentially eligible for cancellation of removal or adjustment of status under § 1229b(b)(1), but persons with a drug conviction under § 1227(a)(2)(B) are not eligible for such discretionary relief.

¶20    Moreover, due to his plea, Nunez-Diaz was permanently barred from ever returning to this country.  Ordinarily, an unlawfully present person who is removed may seek readmission after a period of three or ten years.  8 U.S.C. § 1182(a)(9)(B)(i).  A conviction that falls under § 1227(a)(2)(B), however, imposes a permanent bar on such persons from ever returning.  § 1182(a)(2)(A)(i)(II).  Such a consequence can hardly be called harmless.

### III.

¶21    Although Nunez-Diaz may have had little chance of winning at trial, he was entitled to effective assistance of counsel in deciding whether to take that chance or to accept a plea offer.  He gave up his right to trial based on his counsel's deficient advice, which assured the outcome he most feared.  The trial court did not abuse its discretion in granting post-conviction relief, and we affirm the ruling of the trial court and the decision of the court of appeals.

BOLICK, J., joined by PELANDER, J. (Retired), concurring.

**¶22**      I concur fully with the Court's opinion.  I write separately to question *Lee v. United States*, the United States Supreme Court precedent that dictates the outcome here.  137 S. Ct. 1958 (2017).  *Lee* creates a highly unbalanced two-tiered system for criminal defendants seeking relief from convictions for ineffective assistance of counsel: one for aliens subject to deportation and one for most other defendants.

**¶23**      The baseline decision for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  There the Court set forth two requirements for setting aside a conviction: (1) deficient attorney performance of constitutional magnitude and (2) resulting prejudice to the defendant.  *Id.* at 687.  The second requirement, which is solely at issue here, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  Specifically, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, which requires considering "the totality of the evidence" presented.  *Id.* at 695.

**¶24**      For the ordinary defendant seeking to overturn a conviction for ineffective assistance of counsel, this showing is a "high bar."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Certainly, if the guilty verdict would have been essentially a fait accompli even absent deficient performance by counsel, the conviction will be sustained.  *See Strickland*, 466 U.S. at 694.

**¶25**      Not so, where, as here, a defendant is facing deportation and counsel erred in explaining the potential immigration consequences of a plea deal.  In *Lee,* the Court purported to apply *Strickland*, but the standard actually applied in *Lee* could not be more different.  *See* 137 S. Ct. at 1964.  *Strickland* requires that the defendant show prejudice by proving that there is a reasonable probability that the ultimate outcome would have been different but for counsel's deficient performance.  *See* 466 U.S. at 694; *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012).  Thus, under *Strickland*'s articulation of prejudice, the ineffective assistance of counsel claim in *Lee* would have failed.  Indeed, in accepting the plea deal, the defendant in *Lee* admitted his guilt and there was no indication on appeal that he had a viable defense, establishing that the result of a trial would be all but a foregone conclusion that would almost certainly lead to deportation but possibly to greater jail time as well.  *See* 137 S. Ct. at 1966; *see also Menna v.*

*New York*, 423 U.S. 61, 62 n.2 (1975) (per curiam) ("[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case.").

**¶26**　　　　　Nonetheless, the *Lee* Court held that a defendant has the right to have a guilty plea set aside even where the defendant has not shown that the ultimate outcome from proceeding to trial would be different.  137 S. Ct. at 1966–69.  In other words, *Lee*'s holding extends to situations where no viable defense exists to the charges, and thus, deportation and other immigration consequences, as well as jail time, are almost certain results of going to trial.  *Id.*  For the vast majority of alien defendants like the one in *Lee*, there is no difference in outcome between proceeding to trial or taking the plea.  Even so, under *Lee*, a defendant facing immigration consequences gets to attempt a "Hail Mary" pass in a new trial, *id.* at 1967, while defendants in other contexts who likewise faced almost certain conviction at trial don't even get to the line of scrimmage.

**¶27**　　　　　The *Lee* majority cited *Hill v. Lockhart*, 474 U.S. 52 (1985), for the proposition that when a defendant receives ineffective assistance of counsel in connection with a guilty plea, a different standard for evaluating prejudice applies.  *See Lee*, 137 S. Ct. at 1965.  But *Hill* expressly embraced *Strickland*'s two-part requirement in that context, 474 U.S. at 58–59, and subsequent cases that applied *Hill* required the defendant to show that a different outcome was likely absent the ineffective assistance of counsel, *see Lee*, 137 S. Ct. at 1973 (Thomas, J., dissenting) (discussing cases).  As the dissenting opinion by Justices Thomas and Alito demonstrates, *Lee* grossly diverges from *Strickland*, and thus was wrongly decided.  *Id.* at 1969–75.  Because *Lee* creates unequal treatment with regard to ineffective assistance of counsel claims and places unnecessary burdens on Arizona courts, I hope the Supreme Court will reconsider that decision.

STATE v. NUNEZ-DIAZ
JUSTICE LOPEZ, joined by VICE CHIEF JUSTICE BRUTINEL and
JUSTICE GOULD, Concurring in the Result

LOPEZ, J., joined by BRUTINEL, V.C.J., and GOULD, J., concurring in the result.

**¶28**  I concur in the Court's resolution because *Lee v. United States*, 137 S. Ct. 1958 (2017), controls the outcome in this case.  I write separately to clarify my view concerning what constitutes prejudice under *Lee* and *Strickland v. Washington*, 466 U.S. 668 (1984), when a defendant, previously subject to deportation, suffers adverse immigration consequences as a result of a plea he entered due to counsel's deficient advice.

**¶29**  Here, as the majority notes, Nunez-Diaz's plea resulted in a conviction that, under 8 U.S.C. § 1227(a)(2)(B)(i), renders a noncitizen, other than a lawful permanent resident, ineligible for discretionary relief from removal, 8 U.S.C. § 1229b(b)(1)(C), and permanently prevents future admission into the United States, 8 U.S.C. § 1182(a)(2)(A)(i)(II).  *Supra* ¶ 12.  The State conceded that Nunez-Diaz's plea counsel failed to meet an objective standard of reasonableness under *Strickland* when advising him about the immigration consequences of the plea.  Thus, the only question is whether Nunez-Diaz's counsel's error resulted in prejudice under *Strickland*.  *Supra* ¶ 12.

**¶30**  The majority concludes that Nunez-Diaz has established prejudice because his plea resulted in his automatic deportation and loss of potential discretionary relief from removal *and* permanently prevents his future lawful admission into the United States.  *Supra* ¶¶ 16, 19–20.  Although permanent exclusion of admission into the country under 8 U.S.C. § 1182(a)(2)(A)(i)(II) constitutes prejudice under *Strickland* if the sanction is exclusively the result of the plea conviction, I note that deportation and ineligibility for discretionary relief from removal under 8 U.S.C. § 1229b(b)(1)(C) do not constitute prejudice under *Strickland* if a defendant is previously subject to removal as a deportable alien pursuant to 8 U.S.C. § 1227(a)(1)(B).  *See, e.g.*, *United States v. Batamula*, 823 F.3d 237, 242–43 (5th Cir. 2016) (holding that defendant "has failed to put forward a rational explanation of his desire to proceed to trial" where his deportability was "a fait accompli before he pleaded guilty"); *cf. United States v. Donjuan*, 720 F. App'x 486, 490 (10th Cir.) (2018) (reasoning that an illegal alien cannot establish prejudice on an ineffective assistance claim due to deportation because their deportation was a result of their illegal presence, not their attorney's erroneous advice), *cert. denied*, 139 S. Ct. 590 (2018).

STATE v. NUNEZ-DIAZ
JUSTICE LOPEZ, joined by VICE CHIEF JUSTICE BRUTINEL and
JUSTICE GOULD, Concurring in the Result

¶**31** The majority rejects the State's suggestion "that Lee only applies to those who are lawfully present in this country" because Lee "turned not on . . . immigration status but on whether [Lee] was 'prejudiced by the denial of the entire judicial proceeding.'" Supra ¶ 17 (quoting Lee, 137 S. Ct. at 1965). The majority may be correct, but it misses an important point. Lee, like the defendant in Padilla, was lawfully in the United States, entered a guilty plea pursuant to counsel's deficient advice concerning adverse immigration consequences, and became subject to deportation solely as a result of his plea conviction. Lee, 137 S. Ct. at 1962; Padilla v. Kentucky, 559 U.S. 356, 359–60 (2010). In other words, Lee and Padilla established Strickland prejudice because their decision to proceed to trial was rational because they never would have been subject to deportation but for their convictions.

¶**32** In contrast, Nunez-Diaz cannot prove *Strickland* prejudice here based on his subsequent deportation because he was already subject to removal (and an ICE detainer) as a deportable alien under 8 U.S.C. § 1227(a)(1)(B) at the time of his plea conviction. Under *Lee*, a defendant must prove that there exists a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 137 S. Ct. at 1965 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). As the majority notes, *supra* ¶ 13, a defendant makes such a showing by proving that going to trial would have been rational under the circumstances. Here, it would not have been rational for Nunez-Diaz to go to trial to avoid deportation when he was deportable no matter the outcome of the case. *See, e.g.*, *Batamula*, 823 F.3d at 242–43; *Donjuan*, 720 F. App'x at 490.

¶**33** Likewise, Nunez-Diaz fails to meet his burden to show prejudice based on the loss of discretionary relief under 8 U.S.C. § 1229b(b) because such relief is too speculative. *See, e.g.*, *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999) ("[A]n attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation . . . . [S]uch discretionary relief [is] too speculative, and too far beyond the capability of judicial review, to conclude that the alien has actually suffered prejudice from being ineligible for suspension of deportation."); *Rosario v. State*, 165 So. 3d 672, 673 (Fla. Dist. Ct. App. 2015) ("The possibility for an adjustment in status, a matter within the exclusive

STATE v. NUNEZ-DIAZ
JUSTICE LOPEZ, joined by VICE CHIEF JUSTICE BRUTINEL and
JUSTICE GOULD, Concurring in the Result

discretion of federal officials, is too speculative and not a proper basis to support prejudice for a *Padilla* claim."). Although Lee's election to try for a "Hail Mary" win at trial despite virtually no prospect for success may have been rational to attempt to avoid a deportation that would occur only as a result of a conviction, *supra* ¶ 15, *Lee*'s reasoning does not apply here. Nunez-Diaz's victory (avoiding deportation) required not just a "Hail Mary" win at trial, but also a "Hail Mary" win in subsequent immigration proceedings. In other words, even if Nunez-Diaz prevailed at trial, he would remain deportable and would avoid deportation only if a federal official exercised discretion to allow him to remain in the United States despite his illegal status. A chance at such discretionary relief is too speculative to constitute cognizable prejudice.[1]

¶34 However, this approach does not categorically preclude *Lee*'s application to those unlawfully present in the United States (as the State urges) but rather recognizes that *Strickland* prejudice requires a showing that counsel's deficient advice caused a non-speculative, material harm. Although Nunez-Diaz's deportation following his plea conviction and his loss of possible discretionary relief fail to establish prejudice under *Strickland*, I concur in the majority's conclusion that his permanent bar to admission into the United States constitutes prejudice. *Supra* ¶ 20. This adverse immigration consequence, like the deportations in *Padilla* and *Lee*, is a direct material harm that is exclusively the result of his plea conviction. I cannot conclude that, under *Lee,* it was irrational for Nunez-Diaz to try for a "Hail Mary" win at trial in order to avoid the permanent bar to admission to the United States.

¶35 Finally, although *Lee* controls the result in this case, I agree with Justice Bolick's statements in his concurring opinion expressing concern about *Lee*'s "unequal treatment with regard to ineffective assistance of counsel" and its "unnecessary burdens on Arizona courts." *Supra* ¶ 27.

---

[1] Even if loss of eligibility for discretionary relief from removal under 8 U.S.C. § 1229b(b) constituted *Strickland* prejudice, such eligibility is predicated on, among other things, the deportable alien's continuous physical presence in the United States for at least ten years prior to application for relief. 8 U.S.C. § 1229b(1)(A). Based on the record, Nunez-Diaz failed to establish his eligibility for such relief.