NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

SLADJAN PETKOVIC, *Petitioner*.

No. 1 CA-CR 24-0389 PRPC

FILED 02-06-2026

Petition for Review from the Superior Court in Maricopa County
No. CR2018-103820-001
The Honorable Michael C. Blair, Judge

## REVIEW GRANTED; RELIEF DENIED IN PART, GRANTED IN PART

COUNSEL

Maricopa County Legal Advocate's Office, Phoenix
By Michelle DeWaelsche
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Douglas Gerlach
*Counsel for Respondent*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Judge Paul J. McMurdie joined.[1]  Presiding Judge Anni Hill Foster concurred in part and dissented in part.

---

**B R O W N**, Judge:

**¶1**　　　　Sladjan Petkovic seeks review of the trial court's order summarily denying his petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure ("Rule") 33.1.  For the following reasons, we grant review, deny relief in part, and grant relief in part.

**BACKGROUND**

**¶2**　　　　Petkovic was born in former Yugoslavia and lived there 16 years before moving to the United States in 1998.  His native language is Serbo-Croatian.  In late 2017, Phoenix police responded to a fatal shooting.  The victim's wife told officers that Petkovic was responsible for the shooting.  After fleeing from the scene, Petkovic drove until he reached a rest stop in Quartzsite, Arizona.  There, he engaged in a shootout with officers from several law enforcement agencies.  Petkovic was shot several times, including once in the head.  He survived but sustained significant neurological damage that affected his comprehension and communication abilities.

**¶3**　　　　A grand jury indicted Petkovic for first-degree murder, drive-by shooting, and aggravated assault.  Petkovic filed a notice that he was incompetent to stand trial, and the trial court ordered an examination under Rule 11.  Following an evidentiary hearing in June 2018, the court determined Petkovic was incompetent but restorable.  In the months that followed, a psychologist interviewed Petkovic three times to report to the

---

[1]　　　　Judge Paul J. McMurdie was a sitting member of this court when the matter was assigned to this panel.  He retired effective December 31, 2025.  In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court designated Judge McMurdie as a judge pro tempore of the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

court on Petkovic's progress toward achieving competency. These evaluations showed a steady improvement in Petkovic's communicative abilities and understanding of the proceedings against him, and the psychologist opined that Petkovic had achieved competency by January 2019. One month later, the court found Petkovic competent to stand trial. Though Petkovic's evaluations noted his difficulties with communication, nothing in the reports suggested that any interview or evaluation was conducted in any language other than English.

¶4            Before trial, Petkovic requested several trial accommodations considering his struggles with communication and comprehension stemming from his neurological injury, supported by an evaluation conducted by Dr. Van Doren. Though noting that Petkovic's "cognitive language deficits appear to have recovered sufficiently that he [was] competent to stand trial," the report noted that Petkovic "continue[d] to exhibit significant neurocognitive deficits." Dr. Van Doren opined that communication with Petkovic would need to be slow and simple, that he may require questions to be repeated and phrased in multiple ways, and that his reduced mental flexibility may require repeated explanation of certain facts. Though Dr. Van Doren noted that Petkovic's Serbo-Croation was somewhat less affected than his English fluency, as with the Rule 11 reports, Dr. Van Doren never suggested Petkovic could not complete his evaluation in English. Likewise, none of the requested trial accommodations included a request for an interpreter.

¶5            Less than a month after requesting trial accommodations, Petkovic pled guilty to one count of second-degree murder and two counts of aggravated assault. At a change-of-plea hearing, the trial court asked Petkovic several questions about his understanding of the plea agreement and the consequences of pleading guilty. Though Petkovic responded appropriately to many of the court's questions, at times his answers were inconsistent or contradictory. When asked if he had any remaining questions about the agreement, Petkovic responded as follows:

> The Court: Did you have all your questions about the [plea] agreement answered?
>
> [Petkovic]: No.
>
> The Court: Well, did you have all of your questions answered?
>
> [Petkovic]: Yes, of course. Yes.

At another point, the court discussed the ramifications of the court rejecting the plea agreement, Petkovic responded similarly:

> The Court: If I do reject your plea, I'll give both you and the State an opportunity to withdraw from the plea agreement, then the original charges would be reinstated and you can go to trial on those charges. Do you understand that?
>
> [Petkovic]: I don't understand.
>
> The Court: Do you understand that?
>
> [Petkovic]: Yes.

A similar exchange occurred when discussing Petkovic's waiving of his constitutional rights:

> The Court: Do you understand that by entering a guilty plea, you're giving up these constitutional rights?
>
> [Petkovic]: Yeah, I do.
>
> Defense Counsel: You have to answer out loud. Do you have a question?
>
> [Petkovic]: Yes, of course, yes.
>
> The Court: Do you want to give up these constitutional rights?
>
> [Petkovic]: No –- yes.
>
> The Court: If you don't give them up, I can't accept the plea. So I want to make sure, do you want to give up these rights?
>
> [Petkovic]: No. No.
>
> [Defense Counsel]: Do you want to give up the right and do the plea?
>
> [Petkovic]: No.
>
> The Court: Do you want to give up those rights?
>
> [Petkovic]: Yes.

4

The court accepted Petkovic's plea and subsequently sentenced him to 50 years in prison, calculated as follows: 25 calendar years, the maximum term for the second-degree murder conviction, and less than maximum terms of 14.5 years and 10.5 years for the two aggravated assault convictions. The court ordered all sentences to run consecutively.

¶6        Petkovic later filed his PCR petition under Rule 33.1(a) and (c), alleging his English fluency was disrupted by his neurological injury, while his Serbo-Croatian was less affected. And because his plea agreement was provided to him only in English, Petkovic argued his plea was involuntary. He also argued the lack of a Serbo-Croatian interpreter constituted structural error and ineffective assistance of counsel.

¶7        Petkovic pointed to two pieces of evidence to corroborate his factual allegations. He first highlighted the contradictory exchanges between himself and the court during the change-of-plea hearing. He also included a report prepared by neuropsychologist Dr. Walker detailing an evaluation of Petkovic's neuropsychological status in late 2023. After interviewing Petkovic and reviewing his medical records, Dr. Walker concluded that Petkovic's "language was severely impacted," particularly his English, and that Petkovic was unable to effectively communicate without the use of a translator. Without a translator, Dr. Walker expressed concern that Petkovic's plea may not have been knowing, intelligent, and voluntary. Unlike previous evaluations, a Serbo-Croatian interpreter was present, and as Dr. Walker explained, Petkovic needed the translator's help to understand Dr. Walker at various points during the interview.

¶8        The court summarily denied the petition. As to structural error, the court held that "the lack of an interpreter for an individual who did not speak *any* English might be considered as structural error" but noted that such was not true for Petkovic. Instead, the court pointed out that (1) Petkovic was fluent in English before his injury, (2) neither he nor his attorneys, or the court, requested or appointed an interpreter, and (3) no mention of a deficiency in English had been raised until the PCR petition. Explaining that "the trial court is in the 'best position to determine whether a defendant possesses the requisite degree of fluency in the English language' to understand the proceedings and assist in his defense," the court found there was no error. For these same reasons, the court found that Petkovic's plea was knowing, intelligent, and voluntary. As to Petkovic's ineffective assistance of counsel claim, the court concluded that the failure to request an interpreter did not "fall below objectively reasonable standards" for attorney performance because Petkovic was fluent in English.

**¶9**        Petkovic petitioned this court for review. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. § 13-4239, and Rule 33.16.

## DISCUSSION

**¶10**        We review a trial court's ruling on a PCR petition, "including a denial based on lack of a colorable claim, for an abuse of discretion." *State v. Anderson*, 257 Ariz. 226, 230, ¶ 13 (2024). A defendant whose petition states a colorable claim for relief is entitled to an evidentiary hearing. *State v. Donald*, 198 Ariz. 406, 411, ¶ 8 (App. 2000); *see also* Ariz. R. Crim. P. 33.13(a) ("The defendant is entitled to a hearing to determine issues of material fact."). A colorable claim has "the appearance of validity," *State v. Boldrey*, 176 Ariz. 378, 380 (App. 1993), one that, if the allegations are true, would have probably changed the outcome, *State v. Runningeagle*, 176 Ariz. 59, 63 (1993); *State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016). In determining whether a petition presents a colorable claim, courts are "obligated to treat [the defendant's] factual allegations as true," *State v. Jackson*, 209 Ariz. 13, 16, ¶ 6 (App. 2004), unless the record contains evidence that belies such allegations and thus the claims lack "the appearance of validity," *State v. Chairez*, 235 Ariz. 99, 102, ¶ 15 (App. 2013).

**¶11**        In his petition for review, Petkovic argues the trial court: (1) improperly disregarded his factual assertions and corroborating evidence related to the integrity of his plea, (2) committed legal error in dismissing his structural error claim, and (3) improperly dismissed his claim of ineffective assistance of counsel.

### A.        Voluntariness of Plea

**¶12**        Petkovic challenges the trial court's ruling as to the voluntary, intelligent, and knowing character of his guilty plea. Specifically, he argues the court failed to treat his factual allegations as true and ignored certain corroborating evidence when dismissing his claim.

**¶13**        Under Rule 33.1(a), a defendant who has pled guilty to a criminal offense may seek relief from that plea if it was obtained in violation of the United States or Arizona Constitutions. A defendant's decision to plead guilty entails the waiver of several constitutionally protected rights, and thus a guilty plea must be made voluntarily, intelligently, and knowingly. *See State v. Djerf*, 191 Ariz. 583, 594, ¶ 35 (1998); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Petkovic's PCR petition alleged the following: (1) he did not knowingly waive his constitutional rights; (2) his native language is Serbo-Croatian; (3) he understands his native language

6

far better than English after his injury; and (4) he did not fully understand the terms in the plea agreement, which was presented to him only in English.

¶14 The trial court dismissed Petkovic's claims, finding he was fluent in English, never requested an interpreter, and that a finding was made on the record that his plea was knowing, intelligent, and voluntary. But assuming Petkovic's factual assertions are true, as we must, *Jackson*, 209 Ariz. at 16, ¶ 6, Petkovic has stated a colorable claim. If Petkovic could not understand his plea agreement based on language deficiencies stemming from his neurological impairment, his plea could not have been voluntary, knowing, or intelligent. *See State v. Lisner*, 105 Ariz. 488, 491 (1970) ("A defendant must enter a guilty plea freely and voluntarily with understanding of the nature and consequences of the plea."); *Cf. Moran v. Burbine*, 475 U.S. 412, 421 (1986) ("[W]aiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."). Accepting Petkovic's assertion as true, if he did not understand the terms of his plea agreement, he would be entitled to relief under Rule 33.1(a).

¶15 Trial courts, however, need not give unfettered deference to a petitioner's factual claims in all circumstances. A court may properly disregard factual assertions that are wholly contradicted by the record, *see Chairez*, 235 Ariz. at 102, ¶ 15, or which are conclusory and "lack any reliable factual foundation," *State v. Krum*, 183 Ariz. 288, 294 (1995) (affirming a court's ruling rejecting a claim about recanted victim testimony when the claim was supported by third-party affidavits which were "conclusory and completely lacking in detail"). But Petkovic's factual claims are not so baseless or conclusory as to warrant summary dismissal. On the contrary, he provided corroborating evidence to support his factual assertions.

¶16 Petkovic included two expert reports with his petition, both of which raised questions about his English fluency. Dr. Van Doren acknowledged that Petkovic's neurological injury affected his English more than his native language, and that Petkovic had communication and cognitive-related impairments. Dr. Walker found that Petkovic's language abilities, particularly his English capabilities, were "severely impacted" and that he required the use of an interpreter to effectively communicate. At this stage of the post-conviction proceedings, such evidence is enough to corroborate Petkovic's assertions and support his argument that he raised a colorable claim. *Cf. State v. Gunter*, 132 Ariz. 64, 71 (App. 1982) (concluding the defendant was entitled to an evidentiary hearing on the

voluntariness of his plea agreement because his medical records indicated he had taken anti-psychotic medication at the time of his plea).

¶17        The exchanges between the court and Petkovic during the change-of-plea hearing, in which he provided contradictory answers to the court's questions, also provide evidence that he did not understand his plea at the time he entered it.  It is true that a defendant's meaningful participation in such a hearing may undermine later claims that the defendant did not understand the relevant proceedings.  *See State v. Gourdin*, 156 Ariz. 337, 338–39 (App. 1988) (rejecting appellant's argument that he did not understand court proceedings when appellant "was addressed by the court and answered all the court's questions").  But in this case, there were several instances where Petkovic's answers to the court's questions were inconsistent or contradictory, and these responses raise at least some doubt about Petkovic's comprehension of the plea agreement and the dialogue at the change-of-plea hearing.

¶18        The State does not address whether Petkovic raised a "colorable" claim for relief as to the voluntariness of his plea.  Instead, the State focuses on other grounds for the summary dismissal, none of which we find persuasive.  The State cites *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) and several other federal cases to argue that Petkovic must show "that a decision to reject the plea bargain would have been rational under the circumstances."  But *Padilla* and the other cases the State relies on for this argument involved circumstances where the petitioners argued their pleas were invalid based on ineffective assistance of counsel.  *See id.* at 359; *United States v. Saucedo-Avalos*, 753 Fed. Appx. 561, 562–63 (10th Cir. 2018); *Diveroli v. United States*, 803 F.3d 1258, 1262–63 (11th Cir. 2015).

¶19        The State seems to assert that Petkovic must make a showing of prejudice—that he would likely have rejected the plea and gone to trial—to obtain an evidentiary hearing on his petition.  *See State v. Nunez-Diaz*, 247 Ariz. 1, 5, ¶ 13 (2019).  While this is relevant for Petkovic's claim for ineffective assistance of counsel, *infra* ¶¶ 23–24, we are unaware of any authority requiring such a showing for Petkovic's claim that his plea was involuntary, unknowing, and unintelligent.  Although prejudice is a required element of a claim of ineffective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 693 (1984), the State has provided no authority that such a showing is required for Petkovic's PCR claims regarding his English fluency and his comprehension of the plea proceedings, *see State v. Leyva*, 241 Ariz. 521, 525–28, ¶¶ 10–23 (App. 2017) (analyzing a PCR petitioner's claims that his plea was involuntary and his counsel was ineffective but only applying the question of prejudice as to the latter claim).

¶20　　　　The State's remaining arguments center on the merits of Petkovic's claim and the probative value of his evidence.  Specific to his statements at the change-of-plea hearing, the State contends: (1) Petkovic's moments of confusion at the hearing "show no more than momentary hesitation," (2) he signed the plea agreement before the hearing, and (3) his counsel never requested an interpreter throughout the years of representing Petkovic.  As to the expert reports, the State argues Dr. Van Doren never mentioned the need for an interpreter or translation issues, and that Dr. Walker's report should not be considered because it was created after Petkovic was sentenced.  But at this stage of the PCR proceeding, we do not weigh the evidence presented.  Rather, the only issue before us is whether Petkovic established a colorable claim for relief entitling him to an evidentiary hearing under Rule 33.13.  On this record, he has met that burden and thus the trial court abused its discretion by dismissing his petition without a hearing.

### B.　　Structural Error

¶21　　　　Petkovic also challenges the trial court's determination that the lack of an interpreter during the various criminal proceedings did not constitute structural error.  Petkovic's PCR petition asserted that the lack of an interpreter at various court appearances, Rule 11 evaluations, and restoration to competency efforts constituted structural error.  The court determined that "the lack of an interpreter for an individual who did not speak *any* English might be considered as structural error" but that no such error occurred because Petkovic had sufficient English fluency.  Petkovic contends the court applied an incorrect standard by limiting structural error only to cases where a defendant does not speak English at all.

¶22　　　　Whether error, structural or otherwise, occurred in not providing an interpreter at the change-of-plea hearing or at any other time during the case is based on the claim that Petkovic's English was significantly impaired.  On remand, the court should consider whether Petkovic could effectively understand and communicate in English to the extent that he was able to meaningfully participate in his own defense.  *Cf. State v. Natividad*, 111 Ariz. 191, 194 (App. 1974) (recognizing the trial court is in the best position to decide "whether a defendant possesses the requisite degree of fluency in the English language" to protect his rights, including the right to competent counsel).

### C.      Ineffective Assistance of Counsel

**¶23**      Petkovic's final argument concerns his claim for ineffective assistance of counsel.  To establish a claim for ineffective assistance of counsel, Petkovic must demonstrate (1) his counsel's performance was deficient and fell below objectively reasonable standards, and (2) such deficient performance caused Petkovic prejudice.  *See Strickland*, 466 U.S. at 687.  To establish prejudice arising from his plea proceedings, Petkovic must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Nunez-Diaz*, 247 Ariz. at 5, ¶ 13 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  To make this showing, Petkovic's assertion that he would have insisted on going to trial must have been rational under the circumstances.  *Nunez-Diaz*, 247 Ariz. at 5, ¶ 13.

**¶24**      The court denied Petkovic's claim, finding that Petkovic's English fluency meant that his counsel's failure to secure an interpreter was not objectively unreasonable performance under *Strickland's* first prong, and did not reach the question of prejudice.  But nothing in Petkovic's original PCR petition in the trial court, or his petition for review to this Court, asserted it would have been reasonable for him to go to trial and that he would have insisted on doing so.  Petkovic does argue in his reply to his petition for review that proceeding to trial would have been reasonable given that his sentences together establish a de facto life sentence.  However, because he never raised this issue in the trial court and asserted it for the first time to this court in his reply, the argument is waived.  *Cf. State v. Lopez*, 223 Ariz. 238, 239–40, ¶¶ 5–7 (App. 2009) (finding arguments raised for the first time in a reply brief to the trial court were waived).

## CONCLUSION

**¶25**      We grant review but deny relief as to Petkovic's claim of ineffective assistance of counsel.  We grant relief regarding the voluntariness of the guilty plea and whether Petkovic required an interpreter, and we remand to the trial court for an evidentiary hearing under Rule 33.13.

**F O S T E R**, Judge, concurring in part and dissenting in part:

¶26    I concur with the Majority's analysis of the ineffective assistance of counsel claim but dissent on the issue of whether the superior erred in not holding an evidentiary hearing.

¶27    "The relevant inquiry for determining whether the petitioner is entitled to an evidentiary hearing is whether he has alleged facts which, if true, would *probably* have changed the verdict or sentence." *State v. Amaral,* 239 Ariz. at 220, ¶ 11. But as the Majority notes, if the record contains evidence that belies such allegations and thus the claims lack "the appearance of validity," an evidentiary hearing is not required. *State v. Richmond,* 114 Ariz. 186, 194 (1976), *abrogated by State v. Salazar,* 173 Ariz. 399 (1992); *see State v. Lemieux,* 137 Ariz. 143, 147 (App. 1983) (interpreting Arizona Rule of Criminal Procedure 32.8 which provides a similar evidentiary hearing requirement in post-conviction proceedings).

¶28    Here, the record negates Petkovic's claims that he unknowingly waived his constitutional rights and did not fully understand the terms in the plea agreement. Petkovic participated in multiple competency evaluations in preparation for trial and before his plea agreement. Almost four years before entering the plea agreement, during a competency evaluation, the clinical psychologist noted that Petkovic "appear[ed] to comprehend legal educational material that has been taught to him and responds appropriately when asked questions about this material." The psychologist also noted that during his interview, Petkovic "appeared to understand my questions without requiring repetition or other accommodation. He provided rational and germaine (sic) responses to all of my questions. Most of his responses were either yes/no, or short 3-5 word phrases that successfully conveyed his meaning." Though the psychologist determined Petkovic was still incompetent, subsequent evaluations noted further improvement in comprehension of the legal ramifications of his charges.

¶29    Almost six months after the initial evaluation, Petkovic's psychologist determined that Petkovic was competent to stand trial. At the final competency evaluation, the clinical psychologist noted that Petkovic "appeared to track my statements very well and understood and responded appropriately to my questions. The defendant's reasoning skills appear to be fully intact. He handles discussion of abstract concepts well and appears to enjoy having a more in depth conversation." During this same evaluation, Petkovic inquired about the consequences of the court finding him not competent and not restorable and the possibility of deportation.

And when describing a plea bargain, Petkovic stated: "A deal, offer 20-25 years versus life at a trial." He was able to describe all the plea options, the role of a jury and the use of witnesses and evidence at trial. After telling the psychologist of his intent to seek a plea bargain, Petkovic stated that "he believed there was strong evidence against him, and he would likely be sent to prison for life." Subsequent evaluations also determined that Petkovic had a "working knowledge of the Plea Agreement process."

¶30 There is no record that Petkovic ever requested an interpreter during his competency evaluations and the psychologists' reports never mention his inability to comprehend or communicate in English. Though Petkovic points to his answers during the plea colloquy to establish a colorable claim, his responses – short answers and difficulty finding the correct words – are consistent with the issues identified in the psychologists' evaluation reports. The superior court was in the best position to determine whether Petkovic understood the plea and Petkovic has not presented a colorable claim otherwise.

¶31 Based on the record, I discern no abuse of discretion or error in the superior court's summarily denying Petkovic's Petition for Post-Conviction Relief. Petkovic's petition lacks an appearance of validity and therefore was appropriately denied.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR